The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. This is our case number 423-0646, Larson v. Crosby et al. I would like to have counsel for the appellant. Please state your name for the record. Warren Danz. Thank you, and counsel for Appley. Good afternoon. Tom Wilson, Your Honor. Okay, then, Mr. Danz, on behalf of the appellant, you may proceed, sir. Thank you, and good afternoon. May it please the court, counsel, I'm appearing on behalf of Ms. Larson and her husband, the plaintiffs in this case, regarding a motion for summary judgment that was granted to the defendant to find that the time when Ms. Larson knew or should have known that there was a wrongdoing was on May 1 of 2020. The evidence that we present is that Ms. Larson was not aware of the wrongdoing and was not informed until May 22, 2020, which is the date from which we filed the complaint in this case for negligence against Dr. Crosby and the defendant for insertion of gauze in the nasal cavity, which he failed to remove properly. Basically, the background and facts are that on February 23, 2020, Ms. Larson appeared at the to stop in a serious nosebleed, and in doing so, he impacted the nasal passage with gauze. He did make no count of the gauze or have any records of that. On March 3, 2020, Ms. Larson appeared with Dr. Crosby, who proceeded to remove the gauze from the nasal cavity. And again, no count was given and no record of what was put in. Shortly thereafter, Ms. Larson continued to have severe complaints of left ear pain, sinus pressure, headaches, trouble with smell, everything tasted like puke. She was vomiting and suffered seriously. Can I ask you a question? And I know this is a little bit ahead in the timeline. Is there any issue of fact concerning whether your client was told on May 1st that there was a foreign body still in her sinuses? Yes. Okay. Your client's affidavit doesn't really say that. Your client's affidavit said she wasn't told what type of foreign record of nurse bid on May 1, 2020. And what happened on that date is nurse bid, who, by the way, was under the impression that the impaction was a gel foam pack that dissolves on its own. Right. But what I'm going to ask you, though, is the discovery rule has to do with what your client knew. So I'm trying to focus on what your client knew on May 1st. Isn't the evidence that she was told that there was some foreign substance still in her nose? No, she was not told there was foreign substance. She was told that there was a glob of something covered in snot. And she was told that it may be a material that was degenerating from the impaction. And it was her understanding that the material there was a biodegradable dissolvable pack. Okay. I know that's the nurse's understanding about whether it's biodegradable, but there's no evidence your client got into that. Right. All she knew was there was something retained in her nose. He knew that there was something retained in her nose, but she did not know it was a wrongdoing. And I'm going on further. That was not until May 22nd when Miss Larson told them that Taylor Manning, her family doctor, disclosed to her that it was, in fact, gauze that was left in the nasal cavity from Dr. Crosby. And the affidavit goes on to say it was not until this visit that she learned exactly what was left in her nose. Why would that have made any difference to what your client knew? Because your client's not an expert in what kind of packing they use. Why would it have made any difference what she found out May 22nd? Because the inferences that we draw from Nurse Bibb is that she did not tell her that was a foreign subject, a foreign substance. In fact, that is not in the record, foreign substance. She merely told her it may be deteriorating packing, and she thought it was dissolvable. So the... Again, what the nurse thought is kind of beside the point. What the nurse said is what's important, right? Because your client's not charged with knowledge about what the nurse thinks. It's knowledge of what the nurse told her. Well, let me go on further then. The nurse didn't really tell her anything except he just showed her this glob of snot. That's all she did. There was no culture taken, no pictures, no nothing. She didn't know what it was. She looked at a glob of snot and she said, well, maybe this is, you know, material that was... Didn't she testify, I would have explained to her and showed her what was taken out of her nose? Yeah, that's exactly what she said. And the only information that she gave is that she showed her a glob of snot. And she said it would have been, it could have possibly been gauze. And you say when that's possible, is it possible that it was deteriorating packing? And she said yes. Yes, that's exactly true. And with the understanding that it's her time, she thought the packing was gel foam packing that dissolves. What difference would that make to your client? Because she doesn't know the difference, I'm sure. I don't know the difference. Well, I think we have to go back to what the inferences are from that meeting. Because if the client said there's some deteriorating packing, it's gel foam packing, it dissolves, so there's no injury. Where's the evidence that nurse Bibb told her that there was a wrongdoing? I don't see it. I mean, she told her that there was something left in the nerve. But the real issue is nurse Bibb did not identify it as gauze because she never knew it was gauze. She never read Dr. Crosby's records of gauze. She never knew it was gauze. And if she would have known that it was gauze that came out of the nasal passage, she would have said, oh my. Because later on, nurse Bibb in my discovery depth said, oh, I didn't know it was gauze. I didn't know that it was impacted with gauze. She said gauze is never used. That's not my understanding. So I'm drawing the inferences of what occurred when she saw nurse Bibb. And then I'm drawing the information from the Ms. Larson who stated that it was only nurse Manning from her family doctor that told her it was in fact gauze that was removed. And I understand, I guess my conclusion in this case is that I'm presenting to this court that there's a question of fact as to when she became aware that it was wrongfully caused by anyone, including Dr. Crosby. And under the case law that I understand under Witherall and under Michael Lipsy is that if an injured party knows it really should have known and when it was wrongfully caused as a disputed question, it is to be resolved by the finder of fact. And if you go to the court decision, they say that at that time, she knew there was a foreign object. And I dispute that. I'm sorry, I thought you would agree that nurse Bibb told her that there was something showed her what was removed from her nose, but didn't tell her what kind of packing it was. She didn't tell her what it was. She said she didn't know what it was. Mr. Gans, can I ask a question? Yes. To follow up with what Justice Doherty has been asking, do you understand nurse Bibb's testimony to be that she told her that she had removed a glob of something covered in snot? Yes. Did the nurse say or did she indicate in her testimony that she herself felt it might possibly be deteriorating packing as well? Yes. She said that it could be deteriorating packing, but she didn't know. I mean, she made no test of any kind on this material. And again, I go back to the issue that when she said it may possibly be deteriorating packing, in her own mind, she knew it was packing that was dissolvable and biodegradable. So, there would be no inferences here to show that nurse Bibb told her that there was a wrongdoing there. Counsel, as Justice Doherty has pointed out, it's not the question of whether the nurse knew it. The question is what your client knew and whether what she knew would have been enough to alert someone to look into it further. And on this subject, though, I've got the transcript of what was said. And the deposition of the nurse, one of the things, the questions and answers was this. So, removing that glob of whatever it was made her feel better, according to my note, yes. That's what she would have obviously told you, yes. Would you have told her, as the nurse, that what you removed was possibly residual packing from the gauze in her nose? And the answer, I would have said, I am unsure, but it is possible. Is there some other discussion about this by the nurse? I don't recall that nurse Bibb ever mentioned the word gauze to Miss Larson at any time, because at no time did nurse Bibb ever know that there was gauze that was impacted. Well, this is from the nurse's deposition. She was asked, would you have told her that? I didn't tell her that. I'm unsure it's possible, and then the question is, but then you actually document the last sentence under the plan. First paragraph, I'm unsure whether the patient had residual packing present that was deteriorating, causing her a normal taste and smell. Correct, yes. So, she wasn't positive. Would you have shared your suspicions with Deanna? I would have said it was possible. Okay, when you say it's possible, is it possible there was deteriorating packing? Yes. Is there some other aspect of what she said that is part of the record? Well, not only the evidence of what we covered, the fact that we're on the issue of deteriorating packing, and that's the point that I'm making, is that that alone does not show a wrongful cause by Dr. Crosby, because deteriorating packing was that which dissolves on its own. So, what is the inference to be given to what information she gave to Miss Larson? Mr. Danz, doesn't the case law say that the question here is not even whether it's established that it's wrongful, but that it may be wrongful, that there's reason enough for the litigant to inquire, and the Supreme Court has said does not connote knowledge of negligent conduct or knowledge of a cause of action, just enough knowledge to say, I think that I should look into this more. Tell me why that's not present here. Well, you know, I believe that's a question of fact that you present, but when I see that Nurse Bibb told her that it possibly may be deteriorating packing, that alone to me may not be enough for the trier of fact to conclude that she was notified of a wrongdoing by Dr. Crosby. I guess that's the point of my argument. I believe that all of this is a question of fact, because Mrs. Larson has undeniably said that it was not until May 22nd that her family doctor told her that it was in fact false. No one told her that before that, and that's the whole issue of the complaint, not the fact that there's deteriorating packing. So I guess it's a question of fact that I'm arguing to this court that it should be decided by the trier of fact. So I don't know if that answers your question. Thank you. Anything further? Do you have any further argument, Mr. Danz? No, I'll reserve it. Okay, you'll have an opportunity to address this again in rebuttal. Okay, Mr. Wilson, argument on behalf of the just briefly to touch on a couple of the factual issues that the court asked Mr. Danz about. First, this concept that Mr. Danz talks about is being retained gauze. You can search the medical records and that word is never used, and there is actually no evidence in the record that after May, excuse me, March 3, when Dr. Crosby removed the gauze, that gauze was ever removed from Mrs. Larson. So the testimony speaks in terms of packing, not gauze. When your honor asked Mr. Danz about the record, I would also point out to the court the pages of the record on pages C-425 and 426. That is additional questions to Nurse Bibb about the conversation with Mrs. Larson on May 1st. And at that location in the record, what Nurse Bibb testified to was, and my question was then just so we are very clear on what you observed and what you told Mrs. Larson on May 1st, 2020, is you note that it appeared the material that you removed appeared to be deteriorated packing with mucus. Answer, yes. You weren't 100% certain, correct? Yes. And that was your impression at the time, yes. And that's what you would have shared with Mrs. Larson, is it appears to be deteriorated packing, but you didn't tell her as 100% positive that it was, yes. So there's no question on the record that on May 1st that Mrs. Larson certainly knew of her illness that had begun on March 6th, leading to multiple complaints to multiple providers of pain, nausea, weight loss, foul smell, foul taste, and vomiting. Well, Mr. Larson, here's my question about that. It seems like Nurse Bibb was asked multiple questions by multiple parties. And what you just cited is, I think, inconsistent with the question that answered that I've made reference to, which is, again, would you have told her that what you removed was possibly residual packing from the gauze in her nose? I would have said, I am unsure, but it is possible. Now, governing the standards by which we're supposed to conclude that the patient knew was put on sufficient notice so as to pursue further inquiry for the discovery rule to begin to apply. And then she says, by the way, I would have said, I'm unsure. Why isn't that inconsistent with her earlier statement, leaving it to be a question of fact or the trier fact aside? What did she tell Ms. Larson? And what did Ms. Larson understand? What should she have done? I don't believe it is inconsistent, Your Honor. I believe what Nurse Bibb was saying, and it's very clear to me in her transcript, that she believed in her mind that this was deteriorated packing, a foreign substance in Mrs. Larson's nasal cavity. And that is exactly what she shared with Mrs. Larson. Counsel, could I just interject a brief question? Didn't she also indicate, quote, I would not have told her that it was definitely packing because I was not aware of that? Yes, she did. But her belief was that that's what it was. She'd said. But again, we go back to Justice Doherty's question. Her belief isn't relevant. But what she shared relates to the patient. I'm sorry. I didn't mean to. I'm sorry. Yeah. However, it was her belief that it was deteriorated packing. She wasn't 100 percent certain, but she testified repeatedly. That's what she shared with Mrs. Larson. And that's what's relevant. We've already heard that her belief isn't the issue. Correct. But she relate. And I think Justice Steigman's point is, if you go to if you read her entire testimony, it depends on who's asking the question and how they ask the question as to what they get, obviously. But what it boils down to is that I would not have told her that it was definitely packing because I was unsure of that. Correct. Let me get my. There we go. I apologize. I lost my screen for a moment. I apologize. But I believe the record is clear that Nurse Bibb believed it was deteriorated packing, and she shared that belief with Mrs. Larson. And that's what's relevant. She shared that she believed it was a foreign substance. Well, that's what Justice DeArb and I are focusing on. The story is, well, what exactly did she tell Mrs. Larson? And it seems like had she just said the one thing that you mentioned, that would be a different situation than what we have here, where we have repeated explanations by the nurse and which suggests an inference could be drawn that she's just not totally clear what she said or what information she would have passed. Isn't that correct? I don't believe so, Your Honor. I believe that her testimony read entirely and in context is she shared with Mrs. Larson the belief that this was a foreign substance, deteriorated packing. Well, Counselor, here's the point. I think we have all correctly focused on what Mrs. Larson knew and more precisely what she was told because to inform her on what action she should take. And this is a summary judgment. It's a trial court granted. The standard dealing for that is that the party moving for summary judgment must affirmatively show a clear legal right there to free from doubt. And if any facts upon which any reasonable persons may disagree are identified or inferences which may be drawn from those facts lead to different conclusions, the court must deny the motion and direct that resolution of those facts and inferences be made at trial. And in fact, aren't discovery, aren't questions about the discovery of medical malpractice cases typically trial questions? I don't believe that they're always trial questions. I think the cases say that it often can be a question of fact, but it is not always a question of fact. And I would also point out, Your Honor, in this case, in addition to the facts we've discussed, Mrs. Larson herself attributed her injury to Dr. Crosby's care and she expressed dissatisfaction with Dr. Crosby's care, both of which facts the courts rely on in concluding that the time for her to make inquiry begin as of May 1st, which on that date, she had all the information to put a reasonable person on inquiry notice to investigate if she had a claim against Dr. Crosby. And that's the question, not was there malpractice or negligence, but inquiry notice to investigate with knowledge of an injury connected to Dr. Crosby's care in her own mind, dissatisfaction with the care, and the fact that there was a foreign substance in her nose. Counsel, the trial court heard arguments and then took this matter under advisement and entered a written order. The court asked counsel to prepare orders? Yes, the court ruled from the bench and directed myself to prepare the proposed order, which I then shared with Mr. Dance for form and then submitted to the court. Okay, because that order says, in your brief says on page 10, when a plaintiff seeks to utilize the discovery rule, she has the burden to prove the date of discovery. That has nothing to do with this case, is it? Are you intending that there's a burden of at the motion for summary judgment stage that plaintiff had? I do not, your honor. That's in the order and in my brief simply because- Why is it there? Because the plaintiff in this case is relying on the discovery rule and I'm simply trying to provide a complete statement of what I understand. But that's misleading at this point. If this were an appeal from a jury verdict in favor of the plaintiff, in which you argued that the plaintiff had the burden of proof at trial to establish that the discovery rule applied and the plaintiff failed to meet that burden, then this would be an appropriate citation. But in a hearing such as this, where we're reviewing the grant of a motion for summary judgment, that would tend to suggest that you're arguing to this court the plaintiff had a burden on the discovery rule as the non-moving party regarding the motion summary judgment. That isn't the case, is it? It is not and I certainly never intended to suggest that to this court on a summary judgment motion. Well, counsel, it's important not to put in extraneous, potentially misleading citations in your brief if that's your intention not to mislead us. I understand and I apologize if that's how it was taken. That was not my intention, your honor. Okay. We've asked you a lot of questions, but if you have some additional and I think the focus is all of the entire panel where it ought to be, but I don't want to cut you off. You still have time on your oral argument if you wish. I believe I have addressed the points I wanted to make, your honor, if the court does not have any further questions. Well, I see none, so I will ask Mr. Danz and Roboto, do you have any additional remarks, sir? Briefly, your honor. I couldn't hear you, Mr. Danz. I'm sorry? I could not hear what you just said. I see. Can you hear me now? Yes, I can. Briefly, in regards to the issue of gauze that was placed and whether the notice of that was given on the transcript C-590, nurse Bibb stated I would have not told her that it was definitely because I wasn't sure of that. And then on page C-591, I showed her a copy of Dr. Crosby's medical record where he removed the gauze. And in her answer, she said, then she said, it appears that Dr. Crosby's note said that gauze was removed. Yes. And I said, is that the procedure that mentioned the type of gauze? Do you see that? And she went on to explain that I asked her to explain that type of gauze. And she said, not in this city. Counselor, I understand how that's relevant to a case of trial. I don't understand how any of that is relevant to what your client knew to trigger the discovery rule. I guess I would have to sum up to say that there's evidence in both ways. I guess May 1st, I disagree that there's evidence that she got notice of wrongdoing, but she got notice of something. She went to her family doctor May 22nd, and she got noticed that there was gauze removed. That's the issue of the complaint. I guess I'm just submitting to the court that I believe that there's an issue of fact. I believe there's a genuine issue of fact. And in accordance with the statute, I would just ask the court to consider that and to issue an order to allow this to be tried by the trial of fact. Okay. Thank you, Mr. Danz. Thank you, Mr. Wilson. The court will take this matter under advisement and stand at recess.